UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------- X
                                         :
UNITED STATES OF AMERICA,                :
                                         :    25cv3762 (DLC)
            -v-                          :    21cr726 (DLC)
                                         :
EDUAR VIDAL,                             :
                                         :    OPINION AND
                      Defendant.         :        ORDER
                                         :
---------------------------------------- X

DENISE COTE, District Judge:

Following his conviction at trial on bank fraud charges, Eduar Vidal was sentenced principally to 48 months' imprisonment on October 19, 2022. His conviction was affirmed by the Court of Appeals on April 5, 2024.

On May 5, 2025, Vidal filed a timely pro se petition for a writ of habeas corpus. For the following reasons, the petition is denied.

## Background

Vidal was indicted for the crimes of bank fraud and conspiracy to commit bank fraud, in violation of 18 U.S.C. §§ 1344 and 1349. At trial, which was held from June 14 to 21, 2022, the Government established the following.

Vidal owned a small used car dealership in the Bronx. For almost a year spanning 2015 and 2016, Vidal conspired with others to defraud credit unions and banks into making hundreds

of thousands of dollars in auto loans.  A New Jersey conspirator
who ran a credit repair service made fraudulent loan
applications on behalf of borrowers.  The applications falsely
reported income and employment information for the borrowers and
falsely stated that the borrowers wanted the loans to purchase a
car from the defendant's business, E&V Auto Sales Corp. ("E&V").

     After a financial institution issued a check to E&V in the
amount of the approved loan, Vidal would endorse the back of the
check.  Vidal often added a reference to the particular car
which the borrower was supposedly financing with the loan
proceeds, for instance by listing its VIN.  The defendant then
cashed the check at a check cashing store and kept a 10%
commission.  The remainder of the proceeds were split between
his New Jersey conspirator and the borrower.  Most of the loans
went into default.  Because no car had actually been purchased
with the loan proceeds, the financial institution would discover
it had no collateral for the loan.

     At trial, the Government proved that information about five
different vehicles was used to support 18 different fraudulently
obtained loan checks.  For example, Vidal's signature was on
four different checks from four different lenders, all for the
same 2012 Infiniti SUV.  Representatives from defrauded
financial institutions testified that they would not have made

the loans had they known that the loans would not be used to buy a car.  At trial, the Government proved that Vidal, acting with his conspirators, caused a loss of over $600,000.

In affirming the conviction, the Court of Appeals explained that the checks contained "specific representations in the restrictive endorsements, which a rational jury could find Vidal knew were false at the time he endorsed the checks and obtained the lenders' funds.  These false representations were material, as the lenders' disbursement of funds was conditioned on Vidal's commitment to sell particular vehicles."

## Discussion

Under 28 U.S.C. § 2255, a movant may petition a court to "vacate, set aside or correct" a sentence if "the sentence was imposed in violation of the Constitution or laws of the United States" or is "otherwise subject to collateral attack."  Stone v. United States, 37 F.4th 825, 828 (2d Cir. 2022) (quoting 28 U.S.C. § 2255(a)).  Pro se litigants are "entitled to a liberal construction of their pleadings, which should be read to raise the strongest arguments that they suggest."  Green v. United States, 260 F.3d 78, 83 (2d Cir. 2001) (citation omitted).  Nevertheless, a pro se habeas petitioner must prove the unconstitutionality of his conviction under § 2255 by a

preponderance of the evidence.  See Triana v. United States, 205
F.3d 36, 40 (2d Cir. 2000).

A procedural default rule prevents claims that could have
been brought on direct appeal from being raised on a motion
under § 2255 absent a demonstration of either (1) cause and
actual prejudice or (2) actual innocence.  Gupta v. United
States, 913 F.3d 81, 84 (2d Cir. 2019).  To demonstrate cause, a
defendant must show "some objective factor external to the
defense, such that the claim was so novel that its legal basis
was not reasonably available to counsel."  Id. (citations
omitted).  To make a showing of actual innocence, the defendant
must prove his "factual innocence, not mere legal insufficiency"
by demonstrating that "in light of all the evidence, it is more
likely than not that no reasonable juror would have convicted
him."  Id. at 85 (citation omitted).  The procedural default
rule does not, however, apply to claims of ineffective
assistance of counsel.  Yick Man Mui v. United States, 614 F.3d
50, 54 (2d Cir. 2010).

To establish ineffective assistance of counsel,

a defendant must demonstrate that (1) his counsel's
representation fell below an objective standard of
reasonableness, and (2) this deficient performance
caused prejudice to the defendant – that is, there is
a reasonable probability that, but for counsel's
unprofessional errors, the result of the proceeding
would have been different.

United States v. Overton, 24 F.4th 870, 880 (2d Cir. 2022)

(quoting Strickland v. Washington, 466 U.S. 668, 688, 694

(1984)).  "Courts reviewing ineffective assistance of counsel

claims are highly deferential, and must strongly presume that

counsel made all significant decisions in the exercise of

reasonable professional judgment."  United States v. Rosemond,

958 F.3d 111, 121 (2d Cir. 2020) (citation omitted).  "This

presumption is overcome only if counsel failed to act reasonably

considering all of the circumstances." Id. (citation omitted).

Vidal first contends that his attorney was ineffective for

three failings in advocacy at trial.  She failed (a) to

investigate or present evidence that the New Jersey

conspirators, whom he identifies as Carlos Felix and "Penelope,"

orchestrated the scheme; (b) to demonstrate that Vidal was

unaware that the checks had been fraudulently obtained; and (c)

to highlight that Vidal had no direct dealings with the

defrauded banks.  These arguments can be swiftly rejected.

Vidal was zealously represented at trial.  In his

attorney's examinations and arguments, she repeatedly emphasized

that the person responsible for the scheme was the New Jersey

credit-repair businessman, Carlos Felix.  She stressed that

Felix and his employee filed out the false loan applications

with the borrowers, and that all that happened in New Jersey,

and not in the Bronx, where the defendant was located.  She argued that the defendant had "no knowledge" of the false statement on the loan applications.  As for the banks, she argued that the defendant never went near the banks, that the banks did not care about the false statements on the loan applications so long as they got the loan payments, and that they simply charged a higher rate of interest when it became apparent that there was no collateral.  In other words, she covered every topic the petitioner identifies as one that might have assisted him.

Vidal next contends that his attorney failed to argue that his convictions under §§ 1349 and 1344 were unconstitutional. These arguments are based on interpretations of <u>Mathis v. United States</u>, 579 U.S. 500 (2016), and <u>Descamps v. United States</u>, 570 U.S. 254 (2013).  To the extent that either decision posed a legal impediment to his conviction, that issue should have been raised on direct appeal.  Vidal has not shown either cause or actual innocence to overcome that procedural impediment.  In any event, neither decision addressed the statutes at issue here. <u>Mathis</u> and <u>Descamps</u> addressed sentencing enhancements under the Armed Career Criminal Act based on state convictions.

Finally, Vidal appears to contend he is actually innocent of the crime of bank fraud because the fraud was completed by

Felix and Penelope before he cashed the checks and obtained the loan proceeds for himself and others.  He argues that cashing checks without knowledge of the fraudulent representations that caused them to be issued does not constitute bank fraud.  This argument fails.  There was ample evidence at trial that the fraud was not complete until the money was obtained and distributed.  Vidal engaged in fraud through his false representations on the loan checks concerning the sales of vehicles, sales which he knew had not taken place and were not taking place.  Through those representations, he obtained cash for himself, his conspirators, and the borrowers to which none of them were entitled.  Vidal's ignorance about specific representations on the underlying loan applications does not render his conviction vulnerable.

## Conclusion

Eduar Vidal's May 5, 2025 petition for a writ of habeas corpus is denied.  Vidal having not made a substantial showing of a denial of a federal right, a certificate of appealability shall not be granted.  Hoffler v. Bezio, 726 F.3d 144, 154 (2d Cir. 2013).  Pursuant to 28 U.S.C. § 1915(a)(3), any appeal from this Opinion and Order would not be taken in good faith.  See Coppedge v. United States, 369 U.S. 438, 445 (1962).  The Clerk

of Court is directed to mail Vidal a copy of this Opinion and
Order and note mailing on the docket.

Dated:      New York, New York
            September 23, 2025


                                    _____
                                        DENISE COTE
                                    United States District Judge